**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE MARIA MARIN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 15-cr-00252 (PKC) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF JOSE MARIA MARIN'S PETITION FOR A WRIT OF ERROR *CORAM NOBIS* AND TO SUBSTITUTE HIS ESTATE FOR HIS INTEREST IN THE PETITION**

BALLARD SPAHR LLP
James A. Mitchell, Esq.
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: 212.223.0200
mitchellj@ballardspahr.com

BARBOSA LEGAL
Julio Barbosa, J.D., LLM (admitted *pro hac vice*)
407 Lincoln Rd., PH-NE
Miami Beach, Florida 33139
Telephone: 305-501-4680
jbarbosa@barbosalegal.com

*Attorneys for Petitioner José Maria Marin*
*And the Estate of Jose Maria Marin*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................2

A. Marin's Estate Should Be Substituted for his Interest in the Petition for a Writ of *Coram Nobis* ....................................................................................2

B. Marin's Petition is Timely ..........................................................................................6

C. Marin's Estate Continues to Suffer Harm Due to His Criminal Conviction ...........7

D. *Ciminelli* and *Percoco* Support this Court's Rule 29 Decision and the Granting of Marin's *Coram Nobis* Petition ..............................................................8

CONCLUSION ....................................................................................................................11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bank of Skidmore v. Ripley*,
84 S.W.2d 185 (Mo. Ct. App. 1935)....................5

*Blanton v. United States*,
No. 3-86-0593, 1988 WL 182378 (M.D. Tenn. Jan. 27, 1988)....................5

*Bruno v. Sec'y, Fla. Dep't of Corr.*,
700 F.3d 445 (11th Cir. 2012)....................3

*Bumpus v. Warden, Clinton Corr. Fac.*,
426 F. App'x 21 (2d Cir. 2011)....................3

*Garceau v. Woodford*,
399 F.3d 1101 (9th Cir. 2005)....................3

*Hirabayashi v. United States*,
828 F.2d 591 (9th Cir. 1987)....................8

*Keitel v. Mazurkiewicz*,
729 F.3d 278 (3d Cir. 2013)....................4

*Knapp v. Baker*,
509 F.2d 922 (5th Cir. 1975)....................4

*Krantz v. United States*,
224 F.3d 125 (2d Cir. 2000)....................4

*Lockhart v. McCree*,
476 U.S. 162 (1986)....................4

*McClendon v. Trigg*,
79 F.3d 557 (7th Cir. 1996)....................4

*Estate of McKinney v. United States*,
71 F.3d 779 (9th Cir. 1995)....................5

*McMillin v. Bowersox*,
102 F.3d 987 (8th Cir. 1996)....................4

*United States v. Craig*,
907 F.2d 653 (7th Cir. 1990)....................3, 4

*United States v. Evans*,
60 F. App'x 697 (9th Cir. 2003)....................3, 4

*United States v. Full Play Grp. S.A.*,
690 F. Supp. 3d 5 (2023) ....................1, 2, 6, 9

*United States v. Hernan Lopez*,
143 F.4th 99 (2nd Cir. 2025) ....................1, 2, 6, 9

*United States v. Kerner*,
895 F.2d 1159 (7th Cir. 1990) ....................3, 4

*United States v. Loftus*,
796 F. Supp. 815 (M.D. Pa. 1992) ....................8

*United States v. Mandel*,
862 F.2d 1067 (4th Cir. 1988) ....................8

*United States v. Podell*,
572 F.2d 31 (2d Cir. 1978) ....................7

*United States v. Travers*,
514 F.2d 1171 (2d Cir. 1974) ....................7, 8

*Wagner v. Shelly*,
240 Mo. App. 550, 210 S.W.2d 394 (Mo. Ct. App. 1948) ....................5

**Statutes**

28 U.S.C. § 2254 ....................3

28 U.S.C. § 2255 ....................4

**Rules**

Fed. R. Crim. P. 29 ....................6, 7

**INTRODUCTION**

Following the government's full-scale effort to have this Court dismiss the indictments of the defendants in *United States v. Full Play Grp. S.A./Hernan Lopez* in the "interests of justice" because further prosecution of that case did not "fit within the Administration's priorities" (Dkt. 2114 at 32), one is left wondering how its subsequent preparation of the 43-page tome opposing the *coram nobis* petitions of Jose Maria Marin and others to vacate convictions based on the very same theory of prosecution is somehow consistent with meeting those stated government priorities.

Nevertheless, as we demonstrate below, the government's submission fails utterly to demonstrate that Marin's estate should not be substituted for his interests in his *coram nobis* petition for numerous reasons. Chief among them is that the government cannot cite a single case to support its position that presents the actual situation at hand: a *coram nobis* petition filed while a criminal defendant was alive, but who subsequently passed away before the petition could be resolved. The only case law on all fours with this situation is that cited by Marin where courts allowed the substitution.

Second, the government does not even try to address two of the main continuing consequences of Marin's conviction discussed in its previously filed Supplemental Memorandum (Dkt. 2109). That is both: (1) the inability of Marin's estate to pursue civil relief for its economic harm while a conviction remains in place because of collateral estoppel; and (2) the established law that the very existence of a conviction for conduct that no longer represents a crime can itself represent continuing harm. Moreover, the government also nowhere addresses the seemingly illogical and inequitable contradiction of its position here, where a convicted defendant who fails (intentionally or otherwise) to make required financial payments could meet the continuing consequences element of a *coram nobis* petition, while Marin, who diligently met those payment

obligations, does not satisfy that element despite his estate being without about $5 million in fines, forfeiture and restitution that it could use to pay its bills.

Finally, as we also point out below, the government does little to demonstrate that this Court's decision to acquit the defendants in the *Full Play/Lopez* case should not apply directly to this case. Its effort to distinguish the two situations factually falls flat, and it does not even try to address the again seemingly inequitable position it takes where, having sought vigorously to have the Second Circuit's opinion in the matter vacated so it could reinstate the acquittals in *Full Play* and *Lopez*, it now relies almost exclusively on that vacated opinion to seek to deny Marin's petition. That is the very definition of having one's cake and eating it too.[1]

## ARGUMENT

### A. Marin's Estate Should Be Substituted for his Interest in the Petition for a Writ of *Coram Nobis*

The government spends several pages of its submission citing cases supposedly to support its argument that a decedent's estate cannot be substituted for the individual's interest in a *coram nobis* petition. *See* Dkt 2114 at 21-24. There is, however, one fundamental flaw in its argument. Not a single case cited in its brief actually involves the uncommon situation at hand: a petitioner who filed a *coram nobis* petition died ***after*** the petition was already pending. The government does cite a series of *habeas corpus* cases where the defendant's *habeas* petition was mooted upon the individual's death, but it ignores one glaring difference between a *habeas corpus* and *coram nobis* petition: the *habeas* petition is brought by someone **currently in custody** to seek release based on a purportedly unconstitutional detention. However, once the individual in custody dies, release from incarceration is no longer at issue, so the very purpose of the *habeas* petition is

---

1 To the degree applicable, Marin further adopts the arguments of co-defendant Napout and other *coram nobis* petitioners made in their previous papers and in any reply papers to be filed.

mooted. That circumstance is simply not the case with a *coram nobis* petition where other remedies are the goal of the petition itself, as is the case here.

Furthermore, the three *coram nobis* cases that the government claims as support do not help its effort at all. In two of those cases (*U.S. v. Craig and U.S. v. Kerner*), the *coram nobis* petition was brought by the estate ***after*** the defendant had already died. Lastly, the government cites that *United States v. Evans*, 60 F. App'x 697, 697-98 (9th Cir. 2003) asserting that "[n]otably, the Ninth Circuit has also mooted a *coram nobis* appeal based on a petitioner's death." (Dkt. 2114 at 21). But that just misreads the case. In *Evans*, the defendant had not filed a *coram nobis* petition; he was appealing the denial of an untimely *habeas corpus* petition and, as part of that effort, had asked the district court to treat the matter as *coram nobis* petition, but he died before that request had been addressed. In short, *Evans* did not involve the situation here: where a *coram nobis* petition had been filed and was pending when the petitioner died.

The schedule below of pertinent quotes from the government's cases (with emphasis supplied) makes this point even clearer.

| Case | Quote from decision |
|---|---|
| *Bruno v. Secretary, Sec'y, Fla. Dep't of Corr.*, 700 F.3d 445 (11th Cir. 2012) | "Michael George Bruno, Sr. . . . **appeals from the district court's denial of his first federal habeas corpus petition** . . .. This case is currently under submission after briefing and oral argument. . .. Mr. Bruno **died of natural causes**." 700 F.3d at 445. |
| *Bumpus v. Warden, Clinton Corr. Fac.*, 426 F. App'x 21 (2d Cir. 2011) | "Petitioner James Bumpus **appealed from the district court's order denying his 28 U.S.C. § 2254 petition** for a writ of habeas corpus. On April 22, 2011, **while his appeal was pending, Mr. Bumpus died**." 426 F. App'x at 22**.** |
| *Garceau v. Woodford*, 399 F.3d 1101 (9th Cir. 2005) | "After supplemental briefing [of a habeas petition] after remand, oral argument, and submission of the case for decision, petitioner Robert Frederick Garceau **died on December 29, 2004**." 399 F.3d at 1101**.** The case had therefore progressed through the district court, Ninth Circuit, Supreme Court, and remand before Garceau died. |

| | |
|---|---|
| *Keitel v. Mazurkiewicz*, 729 F.3d 278 (3d Cir. 2013) | "Keitel **filed a petition for a writ of habeas corpus** . . . in September 2011. The District Court denied the petition and Keitel timely appealed. . .. [T]he parties notified the Court that **Keitel died on August 11, 2013**." 729 F.3d at 279. |
| *Knapp v. Baker*, 509 F.2d 922 (5th Cir. 1975**)** | "This case involves an appeal from the federal district court's order **granting a writ of habeas corpus**. We heard oral argument on the appeal and the matter was submitted for our decision. However, petitioner Walter Knapp **died on December 20, 1974**." 509 F.2d at 922. |
| *Krantz v. United States*, 224 F.3d 125 (2d Cir. 2000) | "On November 19, 1998, petitioner **filed a § 2255 motion to vacate his convictions** . . .." 224 F.3d at 126**.** The court then states: "While petitioner's motion was pending, **he died on May 11, 2000**." Id. at 126. |
| *Lockhart v. McCree*, 476 U.S. 162 (1986) | McCree's claim had been consolidated with "another **pending habeas case**" involving Grigsby, 476 U.S. at 167, and then "Grigsby, the habeas petitioner with whose case McCree's had been consolidated, **died prior to the District Court's decision, so his case became moot**." Id. at 168 n.2**.** Thus, Grigsby's petition was already pending when he died. |
| *McClendon v. Trigg*, 79 F.3d 557 (7th Cir. 1996) | "McClendon **filed a petition for a writ of habeas corpus**. . .. The district court denied his petition, and McClendon appealed. **While the appeal was pending, McClendon died** . . .." 79 F.3d at 558. |
| *McMillin v. Bowersox*, 102 F.3d 987 (8th Cir. 1996) | "The suggestion reports that Richard McMillin . . . **died** . . . on December 2, 1996. McMillin was before our Court **appealing the denial of his petition for a writ of habeas corpus**." 102 F.3d at 987. |
| *United States v. Craig*, 907 F.2d 653 (7th Cir. 1990) | "Asking that their convictions be vacated, they filed a petition for a writ of error coram nobis with the district court. **Because Walker has passed away, his estate has petitioned for relief.**" **907 F.2d at 655.** Thus, **Jack Walker was already dead when his estate sought coram nobis relief**. The other petitioners—Craig, North, and Pappas—were not deceased petitioners. |
| *United States v. Evans*, 60 F. App'x 697 (9th Cir. 2003) | "Tommie Lee Evans **appeals the district court's denial of his request to treat his untimely 28 U.S.C. § 2255 motion as a Writ of Error Coram Nobis**. . .. The record reveals that **Evans is now deceased**." 60 F. App'x at 697. |
| *United States v. Kerner*, 895 F.2d 1159 (7th Cir. 1990) | "Kerner . . . **died in 1976. Kerner's son Anton, the executor of his father's estate, sought a writ of error coram nobis following the Supreme Court's decision in McNally**," which was decided in 1987. 895 F.2d at 1160. |

In short, any actual authority concerning the factual circumstances at hand are the cases cited by Marin. *See, e.g., Estate of McKinney v. United States*, 71 F.3d 779, 783 (9th Cir. 1995) (recognizing that while an estate and widow could not initiate a *coram nobis* petition after the death of the convicted person, substitution of an estate for someone who had previously filed such a petition was a different situation); *Blanton v. United States*, No. 3-86-0593, 1988 WL 182378 (M.D. Tenn. Jan. 27, 1988) (permitting substitution of decedent's widow in a *coram nobis* filed prior to the petitioner's death and recognizing that -- comparable to Marin's situation here -- under federal common law, actions involving property such as the "right to a refund of fines paid would seem to be a property right" that survives the death." *Id.* at *6); *Wagner v. Shelly*, 240 Mo. App. 550, 555, 210 S.W.2d 394, 396 (Mo. Ct. App. 1948) (where a party died while a *coram nobis* motion was under advisement, executrix was substituted to continue the proceeding); and *Bank of Skidmore v. Ripley*, 84 S.W.2d 185, 185–87 (Mo. Ct. App. 1935) (same).

We recognize that the factual situation here is certainly uncommon, but that respectfully is both why there is limited case law on the issue and, as the government itself recognizes, this issue has never been addressed by the Second Circuit. (Dkt. 2114 at 21). As Marin's cases demonstrate, where the issue has been dealt with by a court, the petitioner's estate has been found to have standing to continue the petition.

Furthermore, the government skirts entirely the fairness issue raised by Marin. The government repeatedly opposed counsel's efforts to have Marin's *coram nobis* petition decided over the last two years because of Marin's failing health and potential passing. Now it cites his death as a reason to moot the petition. Respectfully, that flies in the face of the very principles of equity and fairness that underly why *coram nobis* petitions were established in the first place.

Finally, the government's apparent effort to get mileage from criticizing Marin's counsel for when we advised the Court that Marin had passed away (Dkt. 2114 at 14) does little more than demonstrate the weakness of its arguments here. As Your Honor is certainly aware, counsel for Marin asked the Court multiple times to address his petition because of his failing health and potential passing. The government vigorously opposed those applications and the Court agreed to wait for resolution of the *Full Play/Lopez* situation before addressing Marin's petition and, if necessary at that time, any substitution of his estate. Apparently, the government believes Marin's counsel was somehow planning to ultimately litigate Marin's petition without ever addressing the issue of his death. That is not only ludicrous given that Marin's death was far from a secret (one could read about it on Wikipedia), but also frankly offensive, and we rely on Your Honor's extensive experience with Marin's counsel to appreciate the absurdity of the point.

**B. <u>Marin's Petition is Timely</u>**

The government argues that Marin's petition is somehow not timely brought. It argues that Your Honor's Rule 29 acquittal of in *Full Play/Lopez* "does not serve as a change in the law such that it provides cause for an untimely filing." Dkt. 2114 at 25, Fed. R. Crim. P 29. This argument is circular. The issue at bottom is whether the Rule 29 Order provides a sufficient basis for vacatur of Marin's conviction because it concerns the same crimes as in *Full Play/Lopez*. In other words, as this Court found was the case, did the intervening Supreme Court law reflect sufficient change in the law to support that conclusion? To say the petition is untimely because in the government's view the Supreme Court decision did not result in such a change is nothing more than saying the government is correct as to its substantive argument that the petition should be denied.

Secondly, the argument that Marin and Napout did not make the substantive argument underlying Marin's petition on appeal is bewildering. The issue on appeal was the very one upon which the Court based its Rule 29 Order that "[Section] 1346's scope does not extend to foreign

commercial bribery." Dkt. 2023 at 29. There is little question that, on appeal, Napout argued (and Marin adopted the argument) that "Section 1346 does not criminalize 'a breach of fiduciary duty that a foreign employee owes to his foreign employer.'" Dkt. 2035 at 3-4.

**C. <u>Marin's Estate Continues to Suffer Harm Due to His Criminal Conviction</u>**

The government presents several arguments opposing the conclusion that there are not continuing collateral consequences to Marin's conviction. *See* Dkt. 2114 at 28-30. Entirely missing from those arguments is any attempt to counter two of the main points made in Marin's Supplemental Memorandum (Dkt. 2114 at 6-10). Those include first the point that a conviction will continue to collaterally estop Marin's estate from pursing any recovery of the monies paid because of the conviction. *See, e.g. United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978). That argument is particularly relevant here as to the restitution paid to the relevant soccer federations who were purportedly victims of Marin's conduct, and who have made abundantly clear that the government "is neither obligated nor able to return funds … already transferred to a victim [itself]." Nor, in FIFA's view "does this Court even have jurisdiction over the remission award to FIFA, CONCACAF and CONMEBOL, as that award was made at the discretion of the Department of Justice in 2021." Dkt. 2097. In other words, they are not willingly giving back the money under any circumstances and Marin's estate will have to sue for it.

Second, the government does not address the argument made by Marin that the Court here can find continuing harm to both Marin and his estate from the very existence of a conviction for conduct that no longer represents a crime. The government essentially ignores the law Marin cited that other Circuits have frequently recognized that a writ of *coram nobis* may be appropriate where a conviction rests on a legal theory later determined not to reach the defendant's conduct, even where the petitioner has already served the sentence or paid the penalties imposed. *See United States v. Travers,* 514 F.2d 1171 (2d Cir.

1974) (granting *coram nobis* relief after an intervening Supreme Court decision established that the government had failed to prove an essential element of the federal mail fraud offenses for which the petitioner had been convicted and would otherwise remain branded as a criminal for conduct that did not constitute the federal crime of conviction. *Id.* at 1172–7). *See also United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988); *Hirabayashi v. United States,* 828 F.2d 591, 606–07 (9th Cir. 1987); and *United States v. Loftus*, 796 F. Supp. 815 (M.D. Pa. 1992). As to these two arguments, the government simply fails to address them, effectively conceding that they support the existence of continuing consequences that meet that element of a *coram nobis* petition.

Lastly, while we recognize the case law cited by the government with respect to situations where a petitioner has no outstanding financial obligations from a conviction, it is again worth emphasizing to this Court to the inequity of a situation where a criminal defendant who fully meets his or her financial obligations from a conviction cannot assert continuing financial consequences, while the "ne'er do well" who simply shirks those responsibilities and thus has outstanding debt from the conviction can meet that element of *coram nobis*. Respectfully, such a result is both entirely illogical and inconsistent with the fairness concerns underlying *coram nobis* petitions in the first place.[2]

**D. *Ciminelli* and *Percoco* Support this Court's Rule 29 Decision and the Granting of Marin's *Coram Nobis* Petition**

Much ink has already been spilled by the various *coram nobis* petitioners in support of the conclusion that the commercial bribery conduct underlying all of Marin's crimes of conviction

2 Additionally, Marin's estate continues to assert that damage to his reputation and legacy are a continuing consequence, particularly in his home country and in light of his very public careers as soccer player, Governor of Sao Paulo and President of the Brazilian Soccer Federation.

should not be considered crimes under both the recent Supreme Court precedent and this Court's interpretation of that precedent. We do not intend to repeat those arguments here but rather rely on the past briefing of the issue and, to the degree applicable, the arguments presented by Marin's co-petitioners both previously and in any of their supplemental briefings. Nevertheless, a few points are, we submit, worth emphasizing for the Court.

First, the government asks this Court to basically ignore the Second Circuit's vacatur of the *Full Play/Lopez* decision because it came about from what it terms as a "Grant, Vacate and Remand (GVR)" order it pursued in obtaining that vacatur. Here too, the government wants to have its cake and eat it too. Having vigorously pursued the vacatur of the Second Circuit decision to allow it to carry out its goal of dismissing the *Full Play* and *Lopez* indictments, it now wants this Court to rely on that same vacated decision as persuasive authority. Respectfully, it should not be able to have it both ways. Further to that point, to the degree the government's argument is that its successful effort to vacate the Second Circuit opinion was based on a concern with an administrative choice of where to apply its resources, as opposed, for example, to a fear that the Supreme Court would, in fact, reverse the Second Circuit's opinion, it remains a mystery how that same concern with marshaling its resources does not apply to the extensive effort it is undertaking to oppose these *coram nobis* petitions. The inconsistency of those two positions, respectfully, leads more likely to the conclusion that the vacatur effort did not just involve rearranging resources, but an actual interest in avoiding potentially unwanted Supreme Court law.

To this point, it is noteworthy that in arguing that the evidence at Marin's trial should be viewed under United States law, it cites not to the trial record, but to the Presentence Report of Marin and Napout. Dkt 2114 at 40. The reason we submit is that the government tried the case against Marin on the theory that he committed honest services fraud by violating his fiduciary duty

to his foreign employer CONMEBOL. Almost all of its evidence and arguments went to that point. Further, asserting now that Marin (and the other petitioners) "were **indicted**[] on fraud under a traditional money-or-property theory" (Dkt. 2114 at 41) (emphasis added) does not change what happened at trial.[3] The government relied on theory of honest services fraud that the Supreme Court and this Court have since determined is not valid and not a crime.

3 To the degree the government tries to skirt this issue by asserting payments to CONCACAF were part of its overall alleged conspiracy, that does not change that the basis of their honest services theory was Marin's duty to his foreign employer, nor the absence of any evidence that Marin participated in or even knew of such payments.

**CONCLUSION**

For all of the foregoing reasons and those set forth in his initial papers in support of his Petition, a writ of error *coram nobis* should be granted, the judgment of conviction against Jose Maria Marin should be vacated, and the monies he paid as a result of his criminal conviction should be returned to his estate.

Dated: August 27, 2026

BALLARD SPAHR LLP

By: ______________________________
James A. Mitchell

1675 Broadway, 19th Floor
New York, NY 10019
Telephone: 212.223.0200
mitchellj@ballardspahr.com

BARBOSA LEGAL
Julio Barbosa, J.D., LLM
407 Lincoln Road PH-NE
Miami Beach, FL 33139
Telephone: 305.501.4680
jbarbosa@barbosalegal.com
(admitted *pro hac vice*)

*Attorneys for Defendant José Maria Marin and the Estate of Jose Maria Marin*